**LINK:**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 14-00278 BRO (SHx)** | Date | September 3, 2014 |
| Title | **GREGORY P. STOKES ET AL. V. CITIMORTGAGE, INC.** | | |

| | | |
|---|---|---|
| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** | |
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS)

## ORDER RE: DEFENDANT'S MOTION TO DISMISS [25]

## I. INTRODUCTION

Pending before the Court is Defendant CitiMortgage, Inc.'s motion to dismiss Plaintiffs Gregory P. Stokes, Marian N. Stokes, and Amelia J. Brummel's Complaint or, alternatively, to strike the class allegations. (Dkt. No. 25.) After consideration of the papers filed in support of and in opposition to the instant motion, the Court deems this matter appropriate for decision without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. The Court therefore **VACATES** the hearing. For the following reasons, the Court **GRANTS** Defendant's motion in part and **DENIES** it in part.

## II. BACKGROUND

### A. The Parties

Plaintiffs Gregory and Marian Stokes (the "Stokes Plaintiffs") are California citizens who reside in Yorba Linda, California. (First Am. Compl. ("FAC") ¶ 6.) Plaintiff Amelia Brummel ("Plaintiff Brummel") is a California citizen who resides in Rancho Cucamonga, California.[1] (FAC ¶ 7.)

Defendant CitiMortgage, Inc. is a New York corporation that is headquartered in O'Fallon, Missouri and licensed to do business in California. (FAC ¶ 9.) Defendant acquires and services mortgage loans, including the mortgage loans obtained by Plaintiffs that are the subject of this lawsuit. (FAC ¶¶ 6, 7, 9.)

[1] The Court will refer to the Stokes Plaintiffs and Plaintiff Brummel collectively as "Plaintiffs."

### B. Factual Background

On April 17, 2003, the Stokes Plaintiffs obtained a mortgage on their home, which was serviced by Defendant. (FAC ¶ 6.) Plaintiff Brummel obtained a mortgage on her home on May 7, 2009, which was also serviced by Defendant. (FAC ¶ 7.) As the mortgage servicer for these loans, Defendant stood in as the beneficial owner of a mortgage loan in dealing with the mortgagees. (FAC ¶ 16.) Thus, Plaintiffs submitted their monthly payments to Defendant, and these payments were based on a percentage of the outstanding principal balances of the Plaintiffs' respective loans. (FAC ¶¶ 16–17.) Both the Stokes Plaintiffs and Plaintiff Brummel have since sought loan modifications from Defendant, which form part of the basis of this litigation.

#### 1. The Stokes Plaintiffs

On July 10, 2013, the Stokes Plaintiffs submitted a home loan modification application to Defendant. (FAC ¶ 37.) According to the First Amended Complaint, this application included: (1) a Request for Assistance and Affidavit Form; (2) Dodd-Frank certification; (3) a Form 4506-T; (4) the Stokes Plaintiffs' 2010 tax returns: (5) the Stokes Plaintiffs' 2009 tax returns; (6) the Homeowners Policy Coverages and Limits Declaration Page; (7) income information for the Stokes Plaintiffs, including paystubs; (8) their property tax bill; and (9) bank statements. (FAC ¶ 37.) Plaintiffs also allege that the 2010 tax returns were, at the time, the "most recent signed and filed tax returns as required in Defendant's home loan modification application." (FAC ¶ 37.)

Plaintiffs allege that Defendant failed to provide the Stokes Plaintiffs with a written determination of their loan modification application. (FAC ¶ 38.) Instead, Defendant recorded a Notice of Default on the Stokes Plaintiffs' home on July 18, 2013. (FAC ¶ 38, Ex. A.) On July 31, 2013, one of Defendant's underwriters contacted the Stokes Plaintiffs and requested additional documentation, including their 2012 tax returns. (FAC ¶ 39.) In August 2013, the Stokes Plaintiffs provided Defendant with all of the additional documentation that Defendant had requested, with the exception of their 2012 tax returns, which they allege had not yet been filed. (FAC ¶ 39.) The Stokes Plaintiffs advised Defendant that they had obtained an extension for their 2012 tax returns and assured Defendant that they had provided all of the income information that would be included in their 2012 tax returns. (FAC ¶ 39.)

On October 15, 2013, Defendant informed the Stokes Plaintiffs that their loan modification application had been denied under the Freddie Mac Traditional Modification Program, and gave the Stokes Plaintiffs thirty days to contact Defendant and request an appeal of this denial. (FAC ¶ 40.) On October 19, Defendant recorded a Notice of Trustee Sale on the Stokes Plaintiffs' home, which was scheduled to be conducted on November 18, 2013. (FAC ¶ 41.)

On October 29, 2013, the Stokes Plaintiffs contacted Defendant and an additional review for a home loan modification. (FAC ¶ 42.) In response, Defendant's underwriter informed the Stokes Plaintiffs via email on November 4, 2013 that Defendant would continue the review process if the Stokes Plaintiffs provided additional documentation, including their 2012 tax returns. (FAC ¶ 43.) Shortly thereafter, the Stokes Plaintiffs provided Defendant with various additional documents, including their 2012 tax returns, which Plaintiffs allege had been "signed and filed." (FAC ¶ 44.) As a result, Defendant postponed the scheduled November 18 Trustee Sale and reset the date for December 16, 2013. (FAC ¶ 45.)

On December 12, 2013, Defendant informed the Stokes Plaintiffs that their filed had been forwarded to Defendant's underwriter for review. (FAC ¶ 46.) The following day, Defendant contacted the Stokes Plaintiffs again to inform them that the underwriter had denied their loan modification application, and recommended that they pursue a short sale. (FAC ¶ 47.) Three days later, on December 16, 2013, the Stokes Plaintiffs' home was sold at the Trustee Sale for $585,000. (FAC ¶ 48.) According to Plaintiffs, Defendants informed them that the unpaid debt and costs associated with their home at the time of sale totaled $308,177.62, an amount that Plaintiffs believe included illegal late fees that were assessed between July 10, 2013 and December 16, 2013. (FAC ¶ 48.)

Over the next several weeks, Defendant contacted the Stokes Plaintiffs multiple times to confirm that their application had been rejected under various loan modification programs. (FAC ¶¶ 49–53.)

### 2. Plaintiff Brummel

On August 8, 2013, Defendant filed a Notice of Default on Plaintiff Brummel's home. (FAC ¶ 56.) Plaintiff Brummel responded by submitting a loan modification application to Defendant on October 1, 2013. (FAC ¶ 57.) This application included the

following documents: (1) a Request For Modification and Affidavit Form; (2) Dodd-Frank certification; (3) a Form 4506-T; (4) Plaintiff Brummel's 2011 tax returns; (5) a Homeowners Policy Coverages and Limits Declarations Page; (6) Plaintiff Brummel's income information, including paystubs; (7) bank statements; (8) a homeowners' association statement; (9) a utility bill; and (10) an additional hardship letter. (FAC ¶ 57.) Plaintiffs also allege that Plaintiff Brummel's 2011 tax returns were her "most recent signed and filed tax returns as required in Defendant's home loan modification application." (FAC ¶ 57.)

According to Plaintiffs, on November 6, 2013, Defendant informed Plaintiff Brummel that her loan modification application had been submitted to Defendant's underwriting department, that an underwriter had not yet been assigned to her application, and that no additional documents were needed. (FAC ¶ 58.) Six days later, Defendant again notified Plaintiff Brummel that her application had been submitted to the underwriting department but that no underwriter had yet been assigned. (FAC ¶ 59.) On November 18, 2013, Defendant recorded a Notice of Trustee's Sale on Plaintiff Brummel's home, which was scheduled to be conducted on December 17, 2013. (FAC ¶ 60, Ex. C.)

On November 21, 2013, one of Defendant's underwriters emailed Plaintiff Brummel to inform her that she had been approved for a loan modification. (FAC ¶ 61, Ex. D.) The following day, Defendant again contacted Plaintiff Brummel and advised her that she had been approved for a Federal Housing Administration ("FDA") Home Affordable Modification Trial Period Plan ("TPP"). (FAC ¶ 62.) Plaintiff Brummel received her TPP agreement on December 5, 2013.[2] (FAC ¶ 63.) The TPP required Plaintiff Brummel to make three trial period payments of $1919.67, after which Defendant would convert the TPP into a permanent loan modification. (FAC ¶ 63.) Plaintiff Brummel made her three trial plan payments on December 27, 2013, January 30, 2014, and March 3, 2014. (FAC ¶¶ 64, 66, 67.)

On March 31, 2014, an underwriter for Defendant contacted Plaintiff Brummel to inform her that a Trustee's Sale was scheduled to be conducted on her property on April 8, 2014, and that there were "no guarantees" that the sale would be postponed as a result

[2] According to Plaintiffs, Plaintiff Brummel's initial TPP erroneously listed a co-borrower. (FAC ¶ 63.) She received a revised TPP that corrected this error on January 3, 2013. (FAC ¶ 63.)

of her compliance with the TPP. (FAC ¶ 68.) On April 2, 2014, Plaintiff Brummel made a fourth trial plan payment in the amount of $1919.67.[3] (FAC ¶ 69.) The following day, Defendant postponed the April 8 Trustee Sale and reset the date to May 5, 2014. (FAC ¶ 70.) The First Amended Complaint, filed April 22, 2014, does not allege whether Defendant ever conducted the Trustee Sale on Plaintiff Brummel's home.

### C. Procedural History

On January 13, 2014, Plaintiffs filed their initial Complaint in this matter against Defendant. (Dkt. No. 1.) On March 24, 2014, Defendant filed a motion to dismiss Plaintiff's Complaint for failure to state a claim. (Dkt. No. 16.) Before the Court ruled on this motion, however, the parties stipulated that Plaintiffs would file an amended complaint, which the Court granted. (Dkt. Nos. 18, 19.) Plaintiffs then filed their First Amended Complaint on April 22, 2014. (Dkt. No. 20.) On May 22, 2014, Defendant filed the instant motion to dismiss Plaintiffs' First Amended Complaint. (Dkt. No. 25.) Plaintiffs opposed this motion on July 11, 2014, (Dkt. No. 30), and Defendant replied on August 1, 2014, (Dkt. No. 36).

## III. LEGAL STANDARD

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.*

[3] The Complaint alleges that, although Defendant has not provided Plaintiff Brummel with a permanent loan modification, it has nevertheless advised her to continue making TPP payments.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 14-00278 BRO (SHx)** | Date | September 3, 2014 |
| Title | **GREGORY P. STOKES ET AL. V. CITIMORTGAGE, INC.** | | |

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV. REQUEST FOR JUDICIAL NOTICE

When considering a motion to dismiss, a court typically does not look beyond the complaint in order to avoid converting a motion to dismiss into a motion for summary judgment. *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n Solimino*, 501 U.S. 104 (1991). Notwithstanding this precept, a court may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and (2) matters in the public record. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one "not subject to reasonable dispute in that it (1) is generally known within the territorial jurisdiction of the trial court; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Further, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014).

Here, Defendant requests that the Court take judicial notice of (1) the Consent Judgment entered in *United States et al. v. Bank of America et al.*, No. 12-cv-00361-RMC (D.D.C. Apr. 4, 2012) (Dkt. No. 12) (the "National Mortgage Settlement"), and (2) the National Mortgage Settlement Term Sheet, which is attached to the National Mortgage Settlement as an exhibit. (Dkt. No. 26.) Defendant argues that the Court may properly take judicial notice of these documents because they are matters of public record. The Court agrees and therefore **GRANTS** Defendant's request to take judicial notice of the National Mortgage Settlement and the National Mortgage Settlement Term Sheet. *See Rijhwani v. Wells Fargo Home Mortg., Inc.*, C 13-05881 LB, 2014 WL 890016, at *1 n.3 (N.D. Cal. Mar. 3, 2014) (taking judicial notice of the National Mortgage Settlement as a public record).

Defendant also requests that the Court take judicial notice of Plaintiff Brummel's TPP on the basis that this document is incorporated into the Complaint. (Dkt. No. 26 at

2.) Indeed, "[o]n a motion to dismiss, [the Court] may consider materials incorporated into the complaint." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Here, Plaintiff Brummel's TPP is incorporated into the Complaint because the Complaint makes numerous references to the TPP and alleges that Defendant violated its terms. (FAC ¶¶ 62–71.) Accordingly, the Court **GRANTS** Defendant's request to take judicial notice of Plaintiff Brummel's TPP on the grounds that Plaintiffs' Complaint incorporates it by reference. *See Lazo v. Bank of Am., N.A.*, C 12-00762 LB, 2012 WL 1831577, at *1 n.3 (N.D. Cal. May 18, 2012) ("Plaintiffs' complaint depends upon the Loan Modification Trial Period Plan, so the court may properly take judicial notice of the facts contained in it, too.").

## V. DISCUSSION

Defendant moves to dismiss each of Plaintiffs' three causes of action for (1) a violation of California's ban on "dual tracking," (2) illegal collection of late fees, and (3) a violation of California's Unfair Competition Law. Alternatively, Defendant requests that the Court strike the class allegations in the Complaint. The Court will discuss each issue in turn.

### A. Dual Tracking

In their first cause of action, Plaintiffs allege violations of Cal. Civ. Code § 2923.6(c), which prohibits a lender from "dual tracking"—*i.e.*, initiating foreclosure proceedings when there is a pending "complete application for a first lien loan modification." An application is deemed to be pending until any of the following occurs:

> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification . . . [;]
>
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer[; or]
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

*Id.* Plaintiffs allege that Defendant violated this provision with respect to each of them. For the following reasons, however, the Court finds that the Stokes Plaintiffs have failed to state a claim under section 2923.6.

### 1. The Stokes Plaintiffs' Section 2923.6 Claim

Defendant advances a number of arguments as to why the Stokes Plaintiffs have failed to state a claim under section 2923.6. The Stokes Plaintiffs, however, maintain that they adequately pled that Defendant violated this section with regard to both of the two applications they submitted in July 2013 and November 2013. (FAC ¶¶ 37, 41.) Some of Defendant's arguments apply only to one of these applications, and some apply to both.

#### *a. The Stokes Plaintiffs Were Given a "Fair Opportunity to Be Evaluated"*

First, Defendant argues that both applications fail because the Stokes Plaintiffs had "already been . . . afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013," which would excuse Defendant of the obligation to evaluate their application. Cal. Civ. Code § 2923.6(g). In support of this argument, Defendant notes that the Notice of Default—which was attached to the First Amended Complaint, (FAC Ex. A)—contained a declaration by a representative of Defendant stating that, on November 9, 2012, the representative contacted the Stokes Plaintiffs "to assess [their] financial situation and explore options for [them] to avoid foreclosure as required by California Civil Code § 2923.55(b)(2)." According to Defendant, this declaration demonstrates that Defendant gave the Stokes Plaintiffs "a fair opportunity to be evaluated." (Dkt. No. 25-1 at 12.)

Plaintiff urges the Court to reject Defendant's argument on the basis that, while the Court may take judicial notice of the Notice of Default itself, the Court may not take judicial notice of the facts alleged in the Notice of Default. Furthermore, Plaintiff contends that it is a factual issue whether this alleged initial contact in November 2012 constituted "a fair opportunity to be evaluated." The Court agrees. "Where factual findings or the contents of the documents are in dispute, those matters of dispute are not appropriate for judicial notice." *Caravantes v. Cal. Reconveyance Co.*, 10CV1407, 2010 WL 4055560, at *8 (S.D. Cal. Oct. 14, 2010). Thus, while a judicially noticed and

uncontradicted declaration accompanying a Notice of Default may establish Defendant's compliance with other provisions requiring Defendant to submit such declarations,[4] it does not suffice to establish that Defendant in fact presented the Stokes Plaintiffs with "a fair opportunity to be evaluated" under section 2923.6(g).

Nevertheless, Defendant contends that any claim based on the November application still fails under subsection (g) because the Stokes Plaintiffs' July application gave them a fair opportunity to be evaluated. Subsection (g) excuses a mortgage servicer from the obligation of considering a loan modification application where the applicant has "been evaluated or afforded a fair opportunity to be evaluated *consistent with the requirements of this section*, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer." Cal. Civ. Code § 2923.6(g) (emphasis added). As the First Amended Complaint concedes, Defendant denied the Stokes Plaintiffs' July application on October 15. (FAC ¶ 40.) And the only documentation of a "material change in financial circumstances" that the Stokes Plaintiffs allege is the submission of their 2012 tax returns. As tax returns do not reflect an actual "change" in one's financial circumstances, this case is distinguishable from the cases relied on by Plaintiff where applicants submitted documentation that they paid off their credit card debt, *see Rosenfeld v. Nationstar Mortg., LLC*, 2:13-CV-04830-CAS, 2014 WL 457920, at *4 (C.D. Cal. Feb. 3, 2014), and it is clearly insufficient, without more, to demonstrate a change in financial circumstances for purposes of subsection (g). *Cf. Ware v. Bayview Loan Servicing, LLC*, 13-CV-1310 JLS NLS, 2013 WL 4446804, at *4 (S.D. Cal. Aug. 16, 2013) (finding that the submission of a letter stating that the "borrowers' routine expenses has [sic] increased" was insufficient documentation to demonstrate a material change in financial circumstances).

Plaintiffs counter by claiming that Defendant did not afford them a fair opportunity to be evaluated "consistent with the requirements of" section 2923.6. Indeed, subsection (d) states that, "[i]f the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the

---

[4] *See, e.g., McFarland v. JP Morgan Chase Bank*, EDCV 13-01838-JGB, 2014 WL 1705968, at *4 (C.D. Cal. Apr. 28, 2014) (dismissing section 2923.5 claim because "the Complaint [did] not allege any facts contending that Defendants failed to contact Plaintiff to assess her financial situation and explore options to avoid foreclosure or failed to satisfy the due diligence requirements").

denial and to provide evidence that the mortgage servicer's determination was in error." Cal. Civ. Code § 2923.6(d). Here, Plaintiffs allege that Defendant denied the Stokes Plaintiffs' first application on October 15 and then initiated foreclosure proceedings on October 19. (FAC ¶¶ 40–41.) Defendant nevertheless contends that it complied with section 2923.6 because the July loan modification application submitted by the Stokes Plaintiffs was not "complete," and thus Defendant was not obligated to comply with the appeal requirement of subsection (d). For reasons discussed below, the Court agrees with Defendant that Plaintiffs failed to allege adequately that their application was "complete."

Although this conclusion would seemingly render the November application the Stokes Plaintiffs' "first" application, Defendant contends that the July application nevertheless provided Plaintiffs with a fair opportunity to be evaluated. In support of this argument, Defendant notes that it informed the Stokes Plaintiffs that it needed their 2012 tax returns for the application to be complete, yet between July and October (when their application was denied) the Stokes Plaintiffs failed to provide them with this documentation. Moreover, as Defendant notes, the First Amended Complaint gives no explanation as to *why* the Stokes Plaintiffs could not produce this documentation in the several months during which Defendant was waiting for them to submit their 2012 tax returns. Instead, Plaintiffs merely allege that they had received an extension for submitting their 2012 tax returns. (FAC ¶ 39.) Yet they provide no explanation for why they could not procure them in the several months after Defendant asked for them, nor why the most recent returns they could provide were from 2010—not 2011 or 2012. Given that the Stokes Plaintiffs had several months in which to provide their tax returns in order to receive an evaluation of their application, the Court concludes that they were provided with a "fair opportunity to be evaluated."

***b. The Stokes Plaintiffs Failed to Submit a Complete Application***

Defendant also contends that neither of the applications submitted by the Stokes Plaintiffs was "complete" as defined in section 2923.6. For the following reasons, the Court agrees with Defendant that Plaintiffs have failed to allege in the First Amended Complaint that either of their applications was "complete."

To begin, Plaintiffs' allegations in the First Amended Complaint that these applications were "complete" are insufficient. Whether a loan modification application is

"complete" is a legal determination that must be made by considering the mandates of section 2923.6(h). A bald allegation that a party submitted "complete" loan modification applications—without sufficient supporting factual allegations—is a conclusory statement, and the Court does not rely on such assertions in evaluating the sufficiency of Plaintiff's complaint. *See Iqbal*, 556 U.S. at 679. Indeed, courts typically uphold the sufficiency of such claims only upon the submission of robust factual allegations demonstrating that the application was complete. *See, e.g.*, *Flores v. Nationstar Mortg. LLC*, CV 13-3898-PLA, 2014 WL 304766, at *3 (C.D. Cal. Jan. 6, 2014) (finding that a complaint adequately pled a "complete" loan modification application where plaintiff submitted the date of the application and additional documents that were requested by defendants to complete the application); *Massett v. Bank of Am., N.A.*, CV 13-4736 CAS SSX, 2013 WL 4833471, at *2 (C.D. Cal. Sept. 10, 2013) (concluding that plaintiffs properly pled that they submitted a "complete" loan modification application where they attached to the complaint an email from defendant confirming receipt of "all of the financial documents required in order to have a speedy review for modification").

With regard to their July application, the Stokes Plaintiffs allege that they submitted a number of documents along with their application. (FAC ¶ 37.) Referencing these documents, Plaintiffs argue that their application should be deemed "complete" because they included all the documents listed in the Home Affordable Modification Program ("HAMP") handbook. But whether an application is complete does not depend on whether it includes all of the documents identified in the HAMP handbook. Rather, an application is deemed "complete" "when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Cal. Civ. Code § 2923.6(h). Because Defendant made it clear to the Stokes Plaintiffs that they required their 2012 tax returns to consider their application, their failure to submit this document despite having several months to do so renders their July application incomplete.[5]

As for their November application, the Stokes Plaintiffs claim that it was complete because they submitted their 2012 returns by that time. (FAC ¶ 44.) Indeed, there does not appear to be anything missing from this application. Yet, as Defendant points out,

[5] Because Plaintiffs have failed to allege that their July application was complete, their derivative argument that Defendant did not comply with the mandatory thirty-day appeal period similarly fails.

Plaintiffs do not allege in the First Amended Complaint that this application provided Defendant with all of the documentation that it required. Plaintiffs make this point in their opposition to this motion, but, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998). Accordingly, to state a claim based on the November application, the Stokes Plaintiffs must allege that they provided Defendant with all of the documentation Defendant required of them.

***c. The National Mortgage Settlement Does Not Bar the Stokes Plaintiffs' Claim at This Stage***

Defendant next argues that the Stokes Plaintiffs' claim is barred under the consent judgment entered in *United States v. Bank of America Corp.*, No. 1:12-cv-00361 RMC (D.D.C. Apr. 4, 2012), commonly known as the National Mortgage Settlement ("NMS"). Defendant is a signatory to the NMS. (Dkt. No. 25-2 at 18.) Under section 2924.12(g), any signatory to the NMS "that is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section . . . 2923.6." Cal. Civ. Code § 2924.12(g).

As Plaintiffs argue, it is not their burden to plead lack of compliance with the NMS. Rather, it is an affirmative defense that Defendant may raise, but which Defendant has the burden of proof to establish. *See Rijhwani*, 2014 WL 890016, at *9 ("Wells Fargo's argument fails at the motion to dismiss stage, however, because this safe harbor, so to speak, appears to be an affirmative defense to be raised on summary judgment and for which Wells Fargo has the burden of proof."). Moreover, Section IV.F.2 of the NMS Term Sheet sates: "Servicer shall notify borrower of any known deficiency in borrower's initial submission of information, no later than 5 business days after receipt, including any missing information or documentation required for the loan modification to be complete." (Dkt. No. 25-2 at 45.) Yet Plaintiffs allege in their First Amended Complaint that Defendant did not notify the Stokes Plaintiffs that it needed further documentation for its July application to be complete until twenty-one days later. (FAC ¶¶ 37, 39.) Thus, Defendant has not demonstrated that it was in compliance with the NMS at this

stage. A more appropriate stage on which to raise this argument would be at summary judgment. *See Rijhwani*, 2014 WL 890016, at *9.

### *d. Plaintiffs Do Not Need to Allege Tender*

Defendant also argues that Plaintiffs have failed to allege tender. Characterizing the Stokes Plaintiffs' claim as "at bottom a claim for wrongful foreclosure," Defendant cites various cases that state the rule that wrongful foreclosure actions require plaintiffs to allege tender. (Dkt. No. 25-1 at 16.) But this is not simply a case of wrongful foreclosure; it is a dual-tracking allegation brought under California's Homeowner Bill of Rights ("HBOR"). And as Defendant concedes, in the few cases that have addressed this issue, courts are divided on whether tender is required to satisfy a section 2923.6 claim. (Dkt. No. 25-1 at 16.) Two federal courts, for instance, have dismissed actions for failure to tender when a section 2923.6 claim is brought in conjunction with other claims that require tender, such as common law actions for wrongful foreclosure. *See Salcido v. Vericrest Fin. & Summit Mgmt. Co.*, No. 13–3450, 2013 WL 5946090, at *3 (N.D. Cal. Nov. 5, 2013) (dismissing with prejudice claims under sections 2923.5 and 2923.6 because the plaintiff did not qualify as a borrower under the statute, and noting that the claims were also defective because plaintiff had failed to tender); *Valenzuela v. Wells Fargo Bank Nat'l Ass'n*, No. 13–1620, 2014 WL 309438, at *6 (E.D. Cal. Jan. 28, 2014) (holding that absent a "credible, legitimate tender, [plaintiff sought] empty remedies, not capable of being granted," and that "failure to require a tender of [plaintiff's] indebtedness would provide him an unjustified windfall").

As the court recently noted in *Bingham v. Ocwen Loan Servicing, LLC*, however, there have been "three recent state courts [sic] decisions refusing to require tender where plaintiffs brought dual tracking claims like those in this case." 13-CV-04040-LHK, 2014 WL 1494005, at *6 n.5 (N.D. Cal. Apr. 16, 2014) (citing *Senigar v. Bank of Am.*, No. MSC13–00352 (Cal. Super. Ct. Feb. 20, 2013) (rejecting tender argument for a dual tracking and Section 2923.7 single-point-of-contact claim); *Pearson v. Green Tree Servicing*, No. 13–01822 (Cal. Super. Ct. Contra Costa Cnty. Sept. 10, 2013) (same); *Mojanoff v. Select Portfolio Servicing Inc.*, No. LC 100052 (Cal. Super. Ct. May 28, 2013) (finding that "the California Home Owner Bill of Rights . . . imposes no tender requirement.")). The court in *Bingham* followed these cases to deny the defendants' motion to dismiss based on failure to tender. *Bingham*, 2014 WL 1494005, at *6.

As the court in *Bingham* recognized, "tender is an equitable concept." *Id.* at *8. Thus, "'[w]hether Plaintiffs are required to tender is a matter of discretion left up to the Court,'" and "'failure to allege tender is not decisive at [the pleading] stage.'" *Id.* (alterations in original) (quoting *Storm v. Am.'s Servicing Co.*, No. 0911206, 2009 WL 3756629, at *6 (S.D. Cal. Nov. 6, 2009); *accord Nguyen v. JP Morgan Chase Bank N.A.*, No. 12–4183, 2013 WL 2146606, at *6 (N.D. Cal. May 15, 2013) (exercising discretion to decline to apply tender at pleadings stage). *But see Wilson v. Household Fin. Corp.*, No. 12–1413, 2013 WL 1310589, at *8 (E.D. Cal. Mar. 28, 2013) (holding that tender is not a matter of discretion, and that "when a foreclosure has occurred, a party must tender the amount of the indebtedness to challenge a voidable sale for irregularities in the sale procedure"). In *Nguyen*, for example, the court noted that tender is an equitable concept and consequently "decline[d] to apply the tender rule at [the] pleading stage without 'an opportunity to undertake a more informed analysis of the equities.'" 2009 WL 3756629, at *6 (quoting *Tamburri v. Suntrust Mortg., Inc.*, No. 11–2899, 2011 WL 6294472, at *5 (N.D. Cal. Dec. 15, 2011)). As in *Nguyen* and *Bingham*, the Court finds that further factual development is necessary to enable the Court to assess the equities involved in determining whether the tender rule should apply. The Court thus declines Defendants' request to dismiss Plaintiffs' claims for failure to tender.

#### *e. Plaintiffs Have Failed Adequately to Allege Causation*

Finally, Defendant argues that Plaintiffs have failed to allege that the conduct underlying their dual-tracking claim actually caused the Stokes Plaintiffs any harm. In support of this argument, Defendant asserts that Plaintiffs have failed to "provide a plausible explanation of how the dual tracking . . . provisions specifically—not just [Defendant's] alleged wrongdoing generally—caused actual economic damages." *Rockridge Trust v. Wells Fargo NA*, No. 13-cv-01457, 2014 WL 688124, at *22 (N.D. Cal. Feb. 19, 2014). Indeed, paragraph 84 of the First Amended Complaint lists a number of damages that the Stokes Plaintiffs have allegedly suffered as a result of Defendant's actions, but it does not allege specifically *how* Defendant's dual tracking caused each of these damages. (FAC ¶ 84.) Thus, to support the list of damages they seek, the Stokes Plaintiffs must plead specifically how Defendant's actions caused each subset of damages. *See Rockridge Trust*, 2014 WL 688124, at *22.

For the foregoing reasons, the Court **GRANTS with leave to amend** Defendant's motion to dismiss Plaintiffs' dual-tracking claim with regard to the Stokes Plaintiffs.

### 2. Plaintiff Brummel's Section 2923.6 Claim

Defendant also moves to dismiss Plaintiff Brummel's section 2923.6 claim, asserting three separate grounds warranting dismissal. For the following reasons, the Court finds that Plaintiffs have adequately alleged a section 2923.6 claim by Plaintiff Brummel and therefore **DENIES** Defendant's motion with regard to this claim.

First, Defendant argues that Plaintiffs failed to allege that Plaintiff Brummel's October 2013 loan modification application was the first such application that she submitted. Defendant provides no evidence to the contrary, however, nor does Defendant cite any authority demonstrating that a plaintiff bringing a section 2923.6 claim must specifically state that the application at issue was the first application she ever filed.

Next, Defendant claims that the NMS bars Plaintiff Brummel's claim because Defendant was in compliance with the NMS Terms Sheet. For the reasons already discussed, however, the Court finds this issue to be more appropriate for disposition at summary judgment, when each party can offer evidence to dispute whether Defendant was indeed in compliance with the NMS. *See Rijhwani*, 2014 WL 890016, at *9.

Finally, Defendant argues that Plaintiff Brummel cannot seek monetary damages because no sale has occurred on her home. (*See* Dkt. No. 25-1 at 18 (citing Cal. Civ. Code § 2924.12(a)(1) ("If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief.").) Plaintiff Brummel concedes that she cannot seek monetary damages. (Dkt. No. 33 at 23.) Accordingly, the Court **GRANTS** Defendant's request to dismiss Plaintiff Brummel's request for monetary damages but **DENIES** Defendant's request to dismiss Plaintiff Brummel's cause of action under section 2923.6.

## B. Illegal Collection of Late Fees

Defendant also moves to dismiss the Stokes Plaintiffs' claim for illegal collection of late fees. Under section 2924.11(f), Defendant may not "collect any late fees for periods during which a complete first lien loan modification application is under

consideration or a denial is being appealed." Cal. Civ. Code § 2924.11(f). Because the Court has found that the Stokes Plaintiffs failed to allege that they submitted a "complete" loan modification application, however, section 2924.11(f) does not apply. *See Rockridge Trust*, 2014 WL 688124, at *24 ("Because section 2924.11(f) provides protection only to borrowers who have submitted 'complete' applications and Plaintiffs do not allege that they submitted a 'complete' application, this provision does not apply here."). Accordingly, the Stokes Plaintiffs' section 2924.11(f) claim is **DISMISSED with leave to amend**.

### C. Unfair Competition Law

Plaintiffs' third cause of action alleges violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, on the basis that Defendant engaged in unlawful and unfair practices related to the servicing of Plaintiffs' mortgages. (FAC ¶¶ 92–108.) Defendant argues that Plaintiffs have failed to plead a cognizable UCL claim under either the UCL's unlawful or its unfair prong, and because they have not adequately alleged injury in fact.

First, Plaintiffs allege that Defendant engaged in unlawful practices because Defendant violated sections 2923.6 and 2924.11(f) of the HBOR. In evaluating a claim under the "unlawful" prong of the UCL, "[v]irtually any law federal, state or local can serve as a predicate for an action" under the UCL. *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (Cal. Ct. App. 2001). "If a plaintiff cannot state a claim under the predicate law, however, [the] Section 17200 claim also fails." *Rudd v. Borders, Inc.*, No. 09cv832 BTM (NLS), 2009 WL 4282013, at *2 (S.D. Cal. Nov. 25, 2009). For the reasons stated above, the Stokes Plaintiffs have failed to state a claim under these provisions, but Plaintiff Brummel has adequately stated a claim under section 2923.6(c). Thus, Plaintiff Brummel has likewise adequately stated a claim under the UCL for unlawful acts under section 2923.6. The Stokes Plaintiffs, however, fail to allege a valid UCL claim based on unlawful conduct.

Second, Plaintiffs support their UCL claim by alleging that Defendant engaged in unfair practices because of "Defendant's persistent and pervasive violations of the HBOR" and because Defendant's conduct "violated established law and/or public policies which were enacted on January 1, 2013 to bring fairness, accountability, and

transparency to the state's mortgage and foreclosure process." (FAC ¶ 101.) Conduct is "unfair" under the UCL when it "offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 939 (Cal. Ct. App. 2003). In "determining whether the challenged conduct is unfair within the meaning of the unfair competition law . . . , 'courts may not apply purely subjective notions of fairness.'" *Id.* at 941 (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (Cal. 1999)). Rather, when a plaintiff's UCL claim alleges unfair conduct in violation of public policy, "the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." *Id.* at 940; *accord Matudio v. Countrywide Home Loans, Inc.*, CV 09-02960 DDP FFMX, 2010 WL 114185, at *3 (C.D. Cal. Jan. 6, 2010). Beyond repeating the same allegations of HBOR violations, Plaintiffs' "unfairness" claim alleges only violations of "established law and/or public policies which were enacted on January 1, 2013." Plaintiffs have thus failed to identify any "*specific* constitutional, statutory or regulatory provisions" that may serve as a predicate for their "unfair" UCL claim. *Scripps Clinic*, 108 Cal. App. 4th at 940 (emphasis added).

Finally, Defendant appears to contend (by arguing an inability to prove damages) that Plaintiffs do not have standing to bring a UCL claim. A claim based on the UCL must be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Sullivan v. Wash. Mut. Bank, FA*, C-09-2161 EMC, 2009 WL 3458300, at *4 (N.D. Cal. Oct. 23, 2009); *accord Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007) ("to have standing to assert any UCL claim, Plaintiff must show either prior possession or a vested legal interest in the money or property allegedly lost"). In their First Amended Complaint, Plaintiffs allege that they have suffered monetary damages as a result of Defendant's conduct "through the loss of their homes, relocation costs, loss of equity in their homes, loss of their TPP Agreement payments, loss of payments of illegal late fees, loss of payments of inflated foreclosure fees, and by having to make mortgage payments on an inflated unpaid principal balance." (FAC ¶ 107.) The Court finds this description to provide adequate detail to support an allegation of injury of fact for the Stokes Plaintiffs, particularly since their home was sold at a Trustee's Sale.

Moreover, that Plaintiff Brummel has not forfeited her property does not defeat her UCL claim. To the contrary, a party need not have her property foreclosed upon in order to bring a UCL claim. *See Sullivan*, 2009 WL 3458300, at *4. In *Sullivan*, for instance, the court recognized that a party may suffer an injury from the initiation of foreclosure proceedings even when no foreclosure has taken place because the "foreclosure proceedings [that] have been initiated . . . put[] her interest in the property in jeopardy." *Id.* Similarly, in *Rabb v. BNC Mortgage*, the court reasoned:

> Plaintiff has alleged sufficient injury in fact to proceed with her UCL claim. The statute only required that she have "suffered injury in fact and [have] lost money or property as a result of unfair competition." Plaintiff alleges "All Defendants collectively are now in the process of conducting a wrongful foreclosure sale of Plaintiff's Property despite having actual knowledge of Plaintiff's valid rescission of the Transaction." This is sufficient to allege injury in fact under the UCL.

CV 09-4740 AHM (RZX), 2009 WL 3045812, at *2 (C.D. Cal. Sept. 21, 2009) (citations omitted) (alteration in original); *accord Saber v. JPMorgan Chase Bank, N.A.*, SACV 13-00812-DOC, 2014 WL 255700, at *4 (C.D. Cal. Jan. 23, 2014) ("Although the Court finds both of Plaintiff's alleged bases for standing specious, some California district courts have held that the initiation of foreclosure proceedings sufficiently jeopardizes a plaintiff's property interest to satisfy the standing requirement. The Court therefore declines to dismiss the case for a lack of standing." (citations omitted)).

Because courts in this Circuit have on multiple occasions found that the initiation of foreclosure proceedings may suffice to establish an injury under the UCL, the Court will not dismiss Plaintiff Brummel's claim for lack of standing. The Court thus finds that Plaintiffs have both adequately pled injury in fact to have standing.

Accordingly, the Stokes Plaintiffs' UCL claim is hereby **DISMISSED with leave to amend**. Defendant's request to dismiss Plaintiff Brummel's UCL claim is **DENIED**.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 14-00278 BRO (SHx)** | Date | September 3, 2014 |
| Title | **GREGORY P. STOKES ET AL. V. CITIMORTGAGE, INC.** | | |

### D. Class Allegations

Finally, Defendant asks the Court to strike Plaintiffs' class action allegations, arguing that Plaintiffs' proposed nationwide class cannot be certified as a matter of law. Given the limited briefing on this issue by the parties, however, particularly by Plaintiffs, the Court declines to rule on the issue at this time. The Court reserves until the class certification stage. Accordingly, Defendant's motion is **DENIED** as premature.

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part as follows:

- Defendant's motion to dismiss Plaintiffs' cause of action for violations of California's ban on dual tracking is **GRANTED** as to Plaintiffs Gregory and Marian Stokes, and **DENIED** as to Plaintiff Amelia Brummel. The Stokes Plaintiffs' dual-tracking claim is **DISMISSED with leave to amend**.

- Defendant's motion to dismiss Plaintiffs' cause of action for illegal collection of late fees is **GRANTED**. Plaintiffs' illegal fees collection claim is **DISMISSED with leave to amend**.

- Defendant's motion to dismiss Plaintiffs' cause of action for violations of the UCL is **GRANTED** as to Plaintiffs Gregory and Marian Stokes and **DENIED** as to Plaintiff Amelia Brummel. The Stokes Plaintiffs' UCL claim is **DISMISSED with leave to amend**.

- Defendant's motion to strike the class allegations is **DENIED** as premature.

Plaintiffs are ordered to file an amended complaint by **Wednesday, September 17, 2014**.

**IT IS SO ORDERED.**

:

Initials of Preparer rf